ELLEN R. QUINLAN, RESPONDENT, v. THE CITY OF UTICA, APPELLANT.

*Negligence, in maintaining sidewalk — evidence as to injuries sustained by other persons — Charter of city of Utica — chap. 18 of 1862 — Costs against city — when allowed — "Claim" — "Account" — defined.*

In an action against the city of Utica to recover damages for injuries sustained by the plaintiff through the neglect of the defendant to repair its sidewalk, the condition of the walk was described and photographs, measurements and models thereof exhibited, and it was shown that for several years preceding the accident the walk was in the same general condition. Subsequently plaintiff was allowed, against defendant's objection and exception, to show that while it was out of repair other persons had slipped and fallen on the walk where plaintiff was injured. *Held*, that the evidence was properly admitted to show that the walk, tested by actual use, was in an unsafe and improper condition at the time of the accident.

Section 128 of the city charter providing that " no costs shall be recovered against the city in any action brought against it for any unliquidated claim which has not been presented to the common council to be audited," does not apply to claims *ex delicto, e. g.,* a claim for damages for injuries sustained by a neglect of the city to repair its streets.

APPEAL from a judgment entered on a verdict for the plaintiff, rendered at the Oneida Circuit in April, 1876, and from an order denying a motion for a new trial on the minutes; also from an order awarding costs to the plaintiff.

The action was brought to recover damages because of injuries to plaintiff's person, caused by the alleged neglect of the defendant to keep one of its sidewalks in a safe and proper condition.

*O. Arthur White,* for the appellant.

*S. M. Lindsley,* for the respondent.

SMITH, J.:

The evidence presented questions of fact as to the alleged negligence of the defendant, and contributory negligence on the part of the plaintiff, which were properly submitted to the jury, and there is nothing in the evidence which requires us to disturb their verdict upon those questions.

It is contended on the part of the appellant that the court erred in permitting the plaintiff to prove that other persons had slipped and fallen, at various times, on the sidewalk where she was injured. The condition of the walk was very fully and minutely described by the witnesses, and photographs, measurements and a model of the surface of the walk, showing its elevations and depressions, were put in evidence. There was testimony showing quite conclusively that for several years immediately preceding the accident, including the various times to which the testimony under consideration referred, the walk was in the same general condition that it was in when the plaintiff received her injuries. It is claimed by the counsel for the respondent that, under these circumstances, the evidence in question was properly received, on the ground that it tended to show that the walk, tested by actual use, had been demonstrated to be in an unsafe and improper condition, and that such was its condition at the time when the plaintiff was injured. We

are inclined to sustain the ruling on that ground. Upon an issue as to the utility, proper condition or safety of any work of human construction designed for practical use, evidence tending to show how the article has served when put to the use for which it was designed, would seem to bear directly upon the issue, and often may be of the most satisfactory and conclusive character. It is objected by the appellant's counsel that the testimony presented new issues, of which his client had no notice, and which it could not be prepared to meet. In one sense, every item of testimony material to the main issue introduces a new issue; that is to say, it calls for a reply. In no other sense did the testimony in question make a new issue. Its only importance was that it bore upon the main issue, and all legitimate testimony bearing upon that issue the defendant was required to be prepared for. The cases cited by the appellant's counsel, in support of the objection, are not applicable. In *Sherman* v. *Kortright* (52 Barb., 267) it did not appear, and there was no offer to show, that the road was in the same condition when the other injuries, which were offered to be proved, occurred as when the plaintiff was injured; on the contrary, it appeared that the breaks in the road of which the plaintiff complained were made the day before the accident, and after the previous injuries had happened. On that ground alone the case was properly decided, and what was said to the effect that the admission of such testimony would present new issues, was not necessary to the disposition of the case. The true ground of objection to the testimony was, not that it presented new issues, but that it did not bear upon the real issue. The other cases cited are *Fillo* v. *Jones* (4 Keyes, 328), *Warner* v. *New York Central Railroad Company* (44 N. Y., 465) and *Ross* v. *Ackerman* (46 id., 210). They are so entirely different from the present case that it is not necessary to refer to them more particularly.

It is also objected that in the present case the evidence showed that in some instances the slipping of others was under entirely different circumstances from those under which this accident occurred. If so, that was for the jury to consider, under proper instructions from the court.

We are not aware of any reported cases in this State precisely in point upon this question, and none have been cited by counsel.

There are actions for setting fires by the negligent use of steam engines, which seem to sustain the rule of evidence for which the respondent contends. *Sheldon* v. *The Hudson River Railroad Company* (4 Kern., 218) was an action to recover for a building which was alleged to have been set on fire by sparks from one of defendant's engines, which passed shortly before the fire was discovered. It was held that evidence that engines of the company passing near that place on other occasions emitted sparks and coals, which fell further from the track than the building in question, was competent after evidence given tending to exclude the probability that the fire was communicated by any other means. To the same effect are *Field* v. *The New York Central Railroad Company* (32 N. Y., 339) and *Westfall* v. *Erie Railway Company* (12 S. C. N. Y. [5 Hun], 75). In *Hinds* v. *Barton* (25 N. Y., 544), which was an action for the firing of a building by a steam engine used to operate a dredge on the Erie canal, it was held that the plaintiff was entitled to give evidence of the distance at which sparks emitted by the engine had kindled fires at different points on the canal previous to the destruction of the plaintiff's property.

Some recent cases decided by the Court of Appeals seem to imply the competency of the testimony in question. They may be briefly referred to. *Dougan* v. *Champlain Transportation Company* (56 N. Y., 7) was an action to recover for death of plaintiff's intestate, who stepped upon an icy deck of defendant's boat, on which he was a passenger, slipped and fell overboard, passing under the guard railing around the deck. The only proof relied on as showing negligence was the leaving the space open between the railing and the deck. *Held*, that there was no evidence of negligence, and that the plaintiff could not recover. GROVER, J., delivering the opinion of the court, said: " There was no proof tending to show that any one had ever before fallen and gone overboard under the railing, or that any such danger had been apprehended by any one." This plainly implies that proof of a similar prior accident at that place would have been competent, as tending to show that the space was dangerous, and consequently that the defendant was negligent in allowing it to remain open and exposed. *Crocheron* v. *North Shore Staten Island Ferry Company* (id., 656) and *Cleveland* v. *New Jersey Steamboat Company* (Ct. App., MS. opin. of FOLGER, J.)

were of the like character.  A similar question was presented, and the like reasoning was advanced by the court.

The cases in other States cited by the respondent's counsel seem to sustain his position.  They are *Hill* v. *Portland Railroad Company* (55 Me., 438); *House* v. *Metcalf* (27 Conn., 631); *Darliny* v. *Westmoreland* (52 N. H., 401; S. C., 13 Am. Rep., 55); *Kent* v. *Lincoln* (32 Vt., 591); *Bailey* v. *Trumbull* (31 Conn., 581); *Calkins* v. *Hartford* (33 id., 57).

We are of the opinion that the exception was not well taken. The other exceptions in the case have been examined, but they point to no error.

The question as to the right of the plaintiff to costs arises upon certain provisions of the defendant's charter.  (Laws 1862, chap. 18, p. 28.)  Section 123 provides that "no costs shall be recovered against the city in any action brought against it for any unliquidated claim which has not been presented to the common council to be audited."  The question is whether this provision relates to claims *ex delicto*.  We are of the opinion that it does not.  The section is contained in title 9, which is entitled "of the auditing of claims against the city," and embraces three sections.  The word "claim" occurs several times in the title.  In the one hundred and twenty-first section it is used in connection with the word "accounts:" "All claims and accounts against the city shall be audited," etc. Sometimes the word "account," and at other times the word "claim," is used alone, and in either case the expression is evidently intended to embrace all demands of every nature to which the title relates.  Thus, "the common council may require 'any account,' etc., to be verified;" "all *claims* must be presented in writing;" "the *claims* shall be audited," etc. ; "in case the common council shall disallow any *claim*, etc., its decision shall be a bar," etc. The term "accounts" is applicable to matters of contract, and not of tort, and according to the maxim "*noscitur a sociis*," the word "claim" thus used has the like meaning.  Section 121 provides that the verification shall be by affidavit, in the same manner that town accounts are required to be verified.  The mode prescribed for verifying town accounts is by the affidavit of the person presenting or claiming the same that the items of such account are correct, and that the disbursements and services charged therein have been in

fact made or rendered, etc. (Laws 1845, chap. 180, § 23, and Laws 1847, chap. 490.) It is manifest that those provisions were not intended to apply to a claim founded upon tort. Again, section 122 provides that no "claim or demand" against the city which has not been audited or which has not been liquidated by the common council shall bear *interest*, a provision wholly unnecessary in the case of unliquidated demands for wrongs, as they do not bear interest. We regard this question as settled by the case of *Howell* v. *The City of Buffalo* (15 N. Y., 512), but as the appellant's counsel has suggested that the language of the statute in that case differed from that of the Utica charter, we have given our views of the construction of the latter act. The case of *McClure* v. *Supervisors of Niagara* (4 Abb. [N. S.], 202) is a clear authority in favor of the respondent.

The judgment and order should be affirmed.

Present — MULLIN, P. J., TALCOTT and SMITH. JJ.

Judgment and order affirmed.